THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VERNON WILBOURN, Defendant-Appellant.

First District (2nd Division)   No. 62484

Opinion filed January 10, 1978.

Reilley, Bell & Weinberg, of Chicago (Zelma Berger, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Iris E. Sholder, Winifred H. Date, and Thomas Gainer, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:
Defendant was convicted for the murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1) of Clarence Johnson and for an aggravated battery (Ill. Rev.

Stat. 1973, ch. 38, par. 12—4) committed against Kenneth Harper. He was sentenced to serve a term of 18 to 40 years for the murder, and 1 to 10 years for the aggravated battery, the sentences to run concurrently. He appeals from these convictions, raising three issues for our consideration: (1) whether the trial court erred in denying defendant's motion for a mistrial following an emotional outburst by the mother of the murder victim; (2) whether certain remarks made by the prosecuting attorney during his closing argument were so prejudicial as to deny defendant a fair trial; and (3) whether the *corpus delicti* for the crime of murder was proved beyond a reasonable doubt.

The facts, stated briefly, are these: Between 10 and 10:30 p.m., on July 6, 1973, Edward, Kenneth, and Velma Harper, Clarence Johnson, and a number of other members of the Harper family were seated on the front porch of the Harper residence at 1315 S. Avers Street, in Chicago. A group of individuals, including defendant and his co-defendant, Thomas McClinton,[1] approached and engaged in a conversation with Kenneth Harper. McClinton accused Harper of "jump[ing] on his little brother and Peaches." Defendant, who was known in the neighborhood by the nickname, "Peaches," said he would be right back. The group then departed.

A few minutes later, defendant and McClinton returned to a location across the street from the Harper residence. Defendant, armed with a shotgun, began to fire in the direction of the porch where the Harpers and Clarence Johnson were sitting. Johnson was shot in the forehead. He died five days later. Kenneth Harper was struck in the right arm by a shotgun pellet.

I.

Defendant argues, without citation of any authority, that the trial court erred in denying his motion for a mistrial following an emotional outburst by the decedent's mother during the testimony of Kenneth Harper. The ourburst occurred as the witness, testifying on behalf of the State, related the circumstances of the shooting of the decedent. The outburst was described as a loud, piercing scream. The jury was promptly removed from the courtroom. Decedent's mother was removed from the courtroom before the jury returned, and the court admonished the jury to disregard the outburst.

In *People v. Herbert* (1935), 361 Ill. 64, 196 N.E. 821, the trial proceedings were interrupted as the defendant testified that he did not know the decedent. Decedent's widow screamed that Herbert was a liar. Such an incident is certainly much more prejudicial than that which

---

[1] McClinton was also found guilty of these crimes. However, this appeal concerns only defendant Vernon Wilbourn.

occurred in the case at bar, and yet the supreme court held that it was not reversible error for the court to deny Herbert's motion for a mistrial.

■■ Our review of the record indicates that there was little possibility that the jury was prejudiced by the outburst. Throughout the trial, defense counsel did not contest the fact that Clarence Johnson was brutally murdered. The defense was simply that the defendant was not there. The trial court noted for the record "that the mother of the deceased gave one scream and immediately * * * I excused the jury* * *." The scream' by decedent's mother, who did not testify, did not in any way reflect on defendant's culpability for the murder. There is nothing in the record to indicate the jury was aware of the identity of the mother. Both the jury and decedent's mother were promptly removed from the courtroom. The trial judge acted promptly and effectively to thwart any prejudice to either party. The court was within its discretion to deny defendant's motion for a mistrial. (See *People v. Spagnola* (1st Dist. 1970), 123 Ill. App. 2d 171, 187-88, 260 N.E.2d 20.) We find no prejudice to the defendant.

## II.

Defendant contends that certain remarks made by the state's attorney during his closing argument to the jury were improper and so prejudicial as to deny defendant a fair trial. The first statement complained of is:

"[B]ear with me, ladies and gentlemen, because we have something at stake and what we have at stake is that people cannot even sit on their own front porch without getting shot and killed, and that is what is at stake here, so bear with me, please."

■■ Defendant maintains that the import of this statement is that the jury should consider the problem of crime in Chicago in determining his guilt and that the passions of the jury were inflamed. Defendant's attorney, however, did not object to the statement. Ordinarily, the defendant's failure to object at trial constitutes a waiver of any error on review. (See *People v. Bailey* (1st Dist. 1966), 76 Ill. App. 2d 310, 321, 222 N.E.2d 268.) In any event, in our opinion, these remarks do not constitute reversible error. *People v. Bailey,* which also involved alleged error in the closing argument, is dispositive of this issue.

Secondly, defendant complains that during his closing argument, the state's attorney picked up a piece of paper which had not been admitted into evidence and waved it in front of the jury, indicating that it was the note which had accompanied the decedent's body from the hospital to the morgue and which had listed the cause of his death as cardiac arrest. Defendant maintains that this was prejudicial because it inferred to the jury that whatever information the note contained was unfavorable to defendant and deliberately withheld from evidence.

■■ We fail to see any prejudice to the defendant from this conduct. This is apparent from the context in which the act occurred. At that portion of his closing argument, the record shows the state's attorney was attempting to demonstrate the weakness of the defendant's attack on the testimony of Dr. Tai An, a forensic pathologist from the Cook County Coroner's Office, as to the cause of death (Dr. An's testimony is discussed in more detail in Part III of this opinion). He was attempting to show that the defendants expected the jury to disregard the testimony of a forensic pathologist that the cause of death was a gunshot wound to the head and to believe instead an unsigned note from the hospital listing the cause of death as cardiac arrest. We note that there is testimony in the record regarding the contents of the note, and that a portion of this testimony was elicited on cross-examination of Dr. An by counsel for the defendant. Furthermore, it is undisputed that the paper used by the prosecutor in his argument was *not* the note, that an objection was raised by counsel for the defendant and sustained by the court, and that the court admonished the jury to consider only the evidence which was presented from the witness stand. Defendant has cited no authority to this court, nor has our own research revealed any authority, that such conduct is reversible error. *People v. Greenfield* (4th Dist. 1975), 30 Ill. App. 3d 1044, 333 N.E.2d 36, was cited by the defendant for the proposition that highly prejudicial remarks are reversible error even where the court sustains an objection. That case held that the remarks there objected to were *not* reversible error, and thus provides no support for defendant's position.

### III.

Defendant urges that the State failed to prove the *corpus delicti* of murder beyond a reasonable doubt. Defendant maintains that the evidence showed that decedent died as the result of cardiac arrest following an operation on the day of his death in which both of his kidneys were removed. Although he cites no case on point, defendant argues that the kidney operation was the cause of death, supervening the effect of the shotgun wound decedent sustained to his head. These conclusions, however, are not supported by the record. They ignore the unrefuted testimony of Dr. An that the shotgun wound to the head was the cause of decedent's death. They are also based on defendant's unfounded medical conclusion that: "Certainly, the kidney operation was not in the natural course of events that would flow from the possible complications of a gunshot wound."

■■ To sustain its burden of proving the *corpus delicti* of the crime of murder, the State must prove, beyond a reasonable doubt: (1) the fact of death; and (2) that the death was the result of the criminal agency of some person. (See *People v. Willson* (1948), 401 Ill. 68, 76, 81 N.E.2d 485;

*People v. De Mario* (1st Dist. 1969), 112 Ill. App. 2d 175, 185, 251 N.E.2d 267.) Dr. An testified to the details of a post-mortem examination he performed upon the body of the decedent. That examination revealed decedent had been shot in the forehead. The trajectory of the bullet had been rightward and downward, the bullet lodging in the back of the brain. Both of the decedent's kidneys had been surgically removed, as had the abdominal aorta. The missing organs, Dr. An testified, were consistent with a "kidney transplant" operation. Dr. An also testified that documents which had accompanied the body from the hospital to the county morgue showed that on the day of his death, decedent had undergone a kidney transplant operation. These papers also listed the cause of death as "cardiac arrest." The papers did not show whether the operation took place before or after decedent's death, although Dr. An's testimony clearly demonstrated his belief that the organs were removed *after* decedent's death to be donated. Dr. An testified that based on his post-mortem examination, and on that basis alone, he concluded that the cause of decedent's death was the bullet wound to the head, lacerating the brain.

On cross-examination by defense counsel, Dr. An responded to a number of hypothetical questions which sought to establish that decedent had died of cardiac arrest during or after the "kidney transplant" operation. Dr. An responded, in substance, that *if* defendant had undergone a kidney transplant operation while alive, he *could* have died of cardiac arrest as a result of the trauma of such an operation. He also stated that no one is allowed to remove both kidneys from a living person, and that in a sense, everyone that dies has cardiac arrest because the heart stops beating.

■■ *People v. Springfield* (1st Dist. 1975), 34 Ill. App. 3d 48, 339 N.E.2d 334, is analogous to the case at bar. There, defendant was charged with the murder of his girl friend following a severe beating in which he had "stomped" on the decedent's abdomen. At trial, a pathologist testified that the cause of death was a laceration of the liver, with major internal bleeding "of the rather broadly applied trauma to the front part of the high anterior abdominal wall." The origin of the injury causing death was a blunt, heavy trauma applied to the belly, compressing the liver until it split open. The pathologist further testified that the injury was totally incompatible with defendant's theory that decedent had fallen down some stairs. On appeal, defendant argued that the pathologist's testimony denied him due process and a fair trial. One ground raised for this assertion was that certain statements made by the pathologist on cross-examination were equivocal to his testimony on direct examination. The court summarily disposed of this argument:

"After the doctor had testified that the cause of death was a severe

laceration of the liver which was most compatible to a stomping of the belly, defense counsel attempted to extract an admission that the damage could have resulted from a fall down the stairs. Although the doctor refused to waver from his position, defense counsel finally inquired if this was not at least a possibility. The doctor replied that 'anything is possible.' Later, the doctor stated that 'he could not see how,' but that it was an 'infinitesimal possibility.' These were not equivocations. The statements did not impair the doctor's testimony, and the argument does not merit serious consideration." (34 Ill. App. 3d 48, 53-54.)

Similarly, the statements elicited from Dr. An on cross-examination are not equivocations which raise a reasonable doubt of the cause of decedent's death. At most, these are matters relevant to his credibility as a witness, an issue which has been resolved by the jury. Based on our review of the record, we are satisfied the cause of death was proved beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and PUSATERI, J., concur.