*In re* DAVID THUR, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID THUR, Defendant-Appellant.)

First District (5th Division)    No. 78-1579

Opinion filed January 25, 1980.

Chester L. Blair, of Chicago (Gilbert C. Schumm, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Michael R. Sherwin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

A petition for the adjudication of wardship was filed against defendant, charging him with the murder of a three-year-old child. Following a bench trial, he was found delinquent and convicted of involuntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a)), and committed to the Department of Corrections. On appeal defendant contends that he was not proved guilty beyond a reasonable doubt. We affirm the judgment of the trial court. The following evidence was adduced at trial.

On July 29, 1977, the victim, 3-year-old Tina McCord, died as a result of an injury to the brain in conjunction with a lacerated liver. At the time, she was under the custody of the Department of Children and Family Services and was living in the foster home of Arthur and Jeannette Thur in Bridgeview, Illinois. Her 4-year-old brother, Jerry McCord, also lived there.

On July 28, defendant David Thur, a 13-year-old, was at home with the victim and her brother. According to defendant, on that morning while playing ball with the victim, he noticed a bruise under her left eye, a cut under her nose, and several bruises on her arms and legs. After his father left the house at approximately 6:30 p.m., the victim ran from the bedroom towards the front door, stopped, and turned around. As she ran towards the back door she fell, hit her face on the side of the organ, and rolled near the couch. Defendant ran outside to find his father, but he had already gone. Defendant came back inside, lifted the victim to her feet and told her to go into the bedroom. As she began to walk faster, she hit the organ again slightly, turned and fell, hitting her head on the bottom corner of the television set. Defendant picked her up, carried her to the bedroom and placed her on the bed. He then wiped her nose and mouth with a cold cloth.

A few seconds later, a friend of the defendant, 12-year-old Phillip Wojtasik, knocked on the door. He was returning after an earlier visit at about 3 p.m. Phillip came in and proceeded to watch television in the living room. Defendant requested that he come into the bedroom, where he saw the victim lying on the bed with a bloody nose, a bruise on her face and a cut on her hand. Her eyes were closed and it appeared as though she was "breathing funny." After defendant told Phillip what had happened, he went back into the living room. He returned to the

bedroom a few minutes later when defendant called him again. He saw defendant stand the victim up by holding her arms and then release her, whereupon she fell back on the floor with her legs bent under her body. Prior to returning her to the bed, defendant placed his foot on her chest and said, "Tina, if you don't wake up I'm going to step on you." Defendant and Phillip then went into the living room.

Shortly thereafter, defendant's sisters, Debra and Diane Thur, and a friend returned to the house, at which time defendant told them what had happened. Neighbors were then summoned and an ambulance was called. According to Debra Thur, the victim had a black eye and numerous bruises on her arms and legs before she left home earlier that day. Diane Thur had noticed bruises on the victim's back, abdomen, legs and arms, and a scratch under her nose as early as July 26.

Police Officer Richard Ryan and Lieutenant Martin Villmek, a paramedic, arrived at the Thur residence between 6:45 and 7 p.m. on the evening in question. They found the victim lying on the bed and observed a large bruise on the right side of her face, bruises on her body, and a cut on her hand. Villmek carried her to the ambulance and proceeded to Palos Community Hospital. In Ryan's opinion, the injuries were not caused by a fall.

Shortly thereafter, Police Officer Leonard Woods, a youth officer with the village of Bridgeview, arrived at the Thur residence. He had a conversation with defendant, during which defendant told him what had happened. Woods then proceeded to the hospital where he observed the victim unconscious, with bruises on her face and about her body.

Medical examinations of the victim conducted by several doctors revealed that: (1) she received a blunt trauma to the head that was not caused by falling against any object; (2) the majority of her injuries were of recent origin; and (3) the injuries were not self-inflicted and could have been inflicted by defendant because of his size and strength. During a subsequent operation performed by a pediatric neurosurgeon, a blood clot and a significant amount of swelling of the brain were discovered.

An autopsy conducted by the Cook County Medical Examiner revealed that the injuries had been inflicted within 24 hours of the autopsy. It was further concluded that the victim's death was caused by another individual. Additionally, the injury to the liver and the internal hemorrhaging were not caused by a heart massage given to the victim.

On July 30, Woods returned to the Thur residence, accompanied by Investigator Antle. During a search of the scene, they found a strand of hair at the base of the television set in the living room. However, it could not be compared with that of the victim because her head had been completely shaven prior to surgery.

At about 6:30 a.m. that day, Assistant State's Attorney Diane Economou had a conversation with defendant at the police station, in the presence of his parents. He told her what had happened on the evening of July 28. He added that in his attempt to pick up the victim after her series of falls, she rolled towards him and his toe hit her stomach.

There was additional evidence introduced which indicated that the victim bruised easily and had difficulty walking because she was pigeon-toed; consequently, she would often fall. Treatment for these problems had been delayed until a permanent foster home could be provided.

Frank Wayne, a 9-year-old foster child, lived with the Thur family during the last two weeks of July 1977. On two occasions during that time, defendant told him that he did not like the victim because she was ugly. According to Wayne, defendant kicked and punched her almost every day. However, Mrs. Thur had previously seen Wayne strike the victim and according to Diane Thur he did not like the victim and often hit her with a softball. Wayne denied ever having struck her in any way.

At the close of all evidence defendant was found delinquent and convicted of involuntary manslaughter. He was adjudged a ward of the court and committed to the Department of Corrections. Defendant now appeals.

OPINION

■■ Defendant contends that based upon the circumstantial evidence presented by the State, he was not proved guilty of involuntary manslaughter beyond a reasonable doubt. He argues that the evidence was insufficient to establish his guilt so as to exclude every reasonable hypothesis of innocence. We disagree.

Section 9—3(a) of the Criminal Code provides:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly * * * ." (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a).)

It is well settled that a conviction can be sustained upon circumstantial evidence as well as upon direct evidence, provided that the proof of circumstances is of a conclusive nature and tendency leading on the whole to a reasonable and moral certainty of the guilt of the accused. (*People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801; *People v. Collins* (1978), 63 Ill. App. 3d 843, 380 N.E.2d 858.) The trier of fact need not be satisfied beyond a reasonable doubt as to each link in the circumstantial chain relied upon to establish guilt as long as the evidence

taken as a whole is sufficient. Circumstantial proof as such does not require proof beyond any possibility of doubt. *People v. Williams.*

■■ In the present case the evidence introduced at trial clearly showed that the victim had multiple bruises on her face and about her entire body, and had received a blunt trauma to the head. According to defendant, these injuries were sustained when he saw her fall several times against an organ and a television set, while running in the house. However, certain medical evidence indicated that the injuries were not caused by falling against any object nor were they self-inflicted. Rather, it was concluded that the injuries could have been inflicted by defendant because of his size and strength. Furthermore, a post-mortem examination of the victim's body indicated that the injuries had been inflicted within 24 hours of the examination. Although circumstantial in nature, we find that this evidence, when taken as a whole, creates a reasonable and moral certainty as to defendant's guilt and excludes any reasonable hypothesis of innocence.

Defendant also argues that the evidence was insufficient to establish that the victim's death was a result of criminal agency. We disagree. In order to prove the corpus delicti in a criminal homicide, the State must prove the fact of death caused by the criminal agency of another. (*People v. Wilbourn* (1978), 56 Ill. App. 3d 1022, 372 N.E.2d 874.) Upon a thorough review of the record, we find that the only reasonable inference that can be drawn is that an act of defendant caused the victim's death and it was an act which was likely to cause death.

■■ ■ Finally, defendant argues that the State failed to prove that he committed a reckless act. Again, we disagree.

Section 4—6 of the Code defines recklessness as follows:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation * * * ." (Ill. Rev. Stat. 1977, ch. 38, par.4—6.)

As to whether the State proved beyond a reasonable doubt that the defendant acted recklessly, the mental state of the defendant must be inferred from the surrounding circumstances. (*People v. Towers* (1974), 17 Ill. App. 3d 467, 308 N.E.2d 223.) Unless the inference of mental state accepted by the trier of fact is inherently impossible or unreasonable, its determination of this issue should not be disturbed. (*People v. York* (1978), 57 Ill. App. 3d 243, 373 N.E.2d 90; *People v. Griffin* (1978), 56 Ill. App. 3d 747, 372 N.E.2d 404.) Considering the circumstances surrounding the victim's death in the present case, we find that the trial court properly

determined that the defendant acted recklessly and this court will not disturb that determination on review.

For the reasons stated, we find that defendant was proved guilty of involuntary manslaughter beyond a reasonable doubt.

Judgment affirmed.

LORENZ and MEJDA, JJ., concur.