THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDMUND HENRY LOPES, a/k/a JASPER BROWN, Defendant-Appellant.

(No. 72-252;

Second District—March 26, 1974.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Ralph J. Gust, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was found guilty of the murder of his wife in a jury trial and was sentenced to 50-99 years in the penitentiary. In this appeal he contends that he was not found guilty beyond a reasonable doubt; that the trial court erred in allowing into evidence pictures of a rope found in a bedroom closet of defendant's residence; and that the remarks of the prosecuting attorney in his closing argument denied the defendant a fair trial.

Defendant's wife was employed by the Plentywood Farm restaurant. During the last week in June, Lois Ruppert, a fellow employee of Mrs. Brown, visited defendant and his wife at their home. Ten witnesses, including neighbors and fellow employees, testified that they never saw her after this visit by Lois Ruppert. A few days before June 28, 1970, a neighbor heard a man and woman quarreling in the home of the defendant. On the night of June 28 this neighbor returned home with her husband between 3 and 3:30 in the morning. She was suffering from a toothache and was in the living room when she observed the defendant's vehicle leave his driveway about 4 in the morning. She then observed defendant's car return about an hour later.

On July 5, 1970, a neighbor called the defendant's residence and asked to speak to his wife, but the defendant stated that she was out shopping. A fellow worker also called the residence numerous times during the month of July, and defendant told her that his wife was either out shopping or in the yard. She asked the defendant to have his wife call her back so that a work schedule could be arranged. Mrs. Ruppert visited the home in the middle of July and defendant told her that his wife had left him a couple of days earlier. Another fellow employee called the residence several times during the month of July, and in each instance she was told by the defendant that his wife was out shopping.

Finally the supervisor at Plentywood Farm attempted to reach Mrs. Brown by telephone, but it had been disconnected. She then went to the residence with the head of the payroll department, did not find anyone, and she thereupon contacted the police. The chief of the Bloomingdale Police Department went to the Brown residence on July 30, 1970, and again defendant stated that his wife was out shopping. The

chief replied he would wait for her. The defendant then changed his story and told the police chief that he and his wife had had an argument and that she had left him and was staying with her brother in Chicago. Upon contacting the brother, the police discovered that he had not seen Mrs. Brown at all during the months of June and July, 1970. Following this, the police put defendant's residence under surveillance, but the defendant had disappeared. He was not found until approximately a year later when he was returned by the authorities from Florida on July 25, 1971.

About 6 months after the disappearance of Mrs. Brown an excavation was being made for a septic system on property near Route 59 and North Avenue, which is a 10- or 15-minute drive from the defendant's residence. The septic tank had been placed in the ground. The contractor was in the process of trenching for a lateral from the tank when he dug up the badly decomposed body of Mrs. Brown which was in a shallow grave. Examination of the body disclosed that the hyoid bone in her neck had been broken.

We first consider the issue as to whether defendant was proven guilty beyond a reasonable doubt.

Examination of circumstantial evidence homicide cases in Illinois discloses one general rule: each case is determined by the totality of the facts and circumstances disclosed by the circumstantial evidence, excluding every reasonable hypothesis of innocence.

Defendant has cited a number of cases where the reviewing court found that the circumstantial evidence of defendant's guilt was not proven beyond a reasonable doubt. The early case of *Mooney v. People* (1884), 111 Ill. 388, is oft cited where the reviewing court does not find that the circumstantial evidence of the guilt of the defendant was sufficient. Briefly, in *Mooney,* two convicts were confined in the same cell in the state penitentiary. One of them was found with a number of wounds on his body from which he died. A good deal of blood was on the victim, in the cell, and on the floor. However, his cell-mate had no blood on him except for a small patch on one pant leg. Because of this, one of the supreme court justices stated, "Thus it is satisfactorily shown, by the decided weight of evidence, that the deceased may have inflicted the wounds himself." 111 Ill. at 389.

In *People v. Campagna* (1909), 240 Ill. 378, 390, 88 N.E. 797, 802, the supreme court quoted *Mooney* as follows: " 'The unquestioned rule in such case is, that before conviction can properly be had the guilt of the accused must be so thoroughly established as to exclude every other reasonable hypothesis.' " The facts in *Campagna* are completely distinguishable from the case before us. The defendant Campagna and the

victim were good friends and both worked for the Illinois Central Railroad in Freeport. On the afternoon of June 18, 1908, a railroad box car used as a work shop was found on fire, and the body of the victim was found inside. The defendant testified as to his whereabouts on the afternoon in question; no identification of the defendant was made, and the evidence, as the court stated, "does little more than excite a suspicion of guilt." The court further found no motive and thus stated, "There is not, in our judgment, any evidence in the record showing any satisfactory motive for him to murder his intimate friend." (240 Ill. at 389.) Defendant has called our attention to the statement in *Campagna:* "As presented in the record this case is so surrounded with mystery and doubt that it is our duty to set aside the judgment of conviction." (240 Ill. at 390.) From our examination of the facts as set forth by the court in *Campagna* we fully agree with the court's statement. However, we do not find that the facts in *Campagna* are in any way comparable to the situation before us as will be pointed out later.

In *People v. Wilson* (1948), 400 Ill. 461, 81 N.E.2d 211, we find another case quite closely akin to the facts in *Campagna*. In *Wilson,* the defendant, a farmer, went out to the barn in the early hours to do the chores. The barn caught on fire from the lantern and his wife was burned to death. The defendant testified and "denied in toto that he had committed the crime." (400 Ill. at 469.) The court, stating that "* * * if there is any reasonable hypothesis arising from the evidence, consistent with the innocence of the defendant, it must be adopted" (400 Ill. at 473), found "[a]s a matter of fact, there is nothing in the evidence which could be seriously urged as a motive for murder * * *." (400 Ill. at 471.) Again we find this case is not applicable to the facts delineated in the case before us, as we will point out.

Another oft-cited case, where the reviewing court found that the evidence did not support the finding that the defendant murdered his wife, is *People v. Ahrling* (1917), 279 Ill. 70, 116 N.E. 764. Here again, the facts are inapposite to those in the case before us. In *Ahrling* the husband was charged with the murder of his wife after her body was found in the ashes of their farm residence early one Monday morning. However, the evidence disclosed that on Sunday morning the defendant with his two children went to the home of his brother-in-law where he remained until Monday morning. He did not return to his home until after the building had burned and his wife's remains were found in the ruins. The court here, again, made the same statement as cited from the *Campagna* case, *supra*, that the case was surrounded by mystery and doubt. See also *People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485; *People v. Lewellen* (1969), 43 Ill.2d 74, 250 N.E.2d 651.

■■■ It is an established principle of criminal law that:

> "The elements of murder which must be established are: The proof of death and the proof of a criminal agency causing death. Both of these elements must be established by evidence beyond a reasonable doubt. After these elements, termed in law the *corpus delicti,* have been proved, then the law requires that the evidence establish beyond a reasonable doubt that the defendant was the criminal agency or put in motion the criminal agency, which caused the death of the victim." *People v. Wilson* (1948), 400 Ill. 461, 480, 81 N.E.2d 211, 220.

This is particularly true in the case of circumstantial proof in a homicide case.

*Campbell v. People* (1895), 159 Ill. 9, cited by defendant, states the *corpus delicti* of the crime of murder consists of two elements: the fact of death, and the criminal agency of another as the cause of death. It is the contention of the defendant that the second of these two elements has not been proven, *viz.,* that the defendant committed the murder. In examining the *Campbell* case we find the interesting observation:

> "To say that in such a case, while every one would admit that the body could be completely destroyed by animals, by fire, or other destructive agencies, circumstantial evidence, though of the most cogent and convincing character, would not be admissible to show the fact of death, *as well as the criminal agency of the accused in producing it,* would be to say that there is a class of the most atrocious crimes which, when committed in secret, as most crimes usually are, and by persons of sufficient capacity and skill to destroy the body, must go unpunished, because the law has closed all avenues but one leading to detection, and has permitted the criminal himself to close that one." (159 Ill. at p. 24.) (Emphasis added.)

In the case before us an attempt was made to dispose of the body, either alive or after she had been killed. However, as indicated above, purely by chance the body was uncovered from the shallow grave. We thus have the first of the two elements of the *corpus delicti:* the fact of death.

We then turn to the question of the criminal agency of the accused in causing the death. We shall first consider the question of motive. Defendant contends that no purpose would have been served by his killing his wife. We do not agree. The direct evidence discloses that defendant was infatuated with another woman who testified that he wanted to marry her. He was having intercourse with this woman both before and after the disappearance of his wife. In *People v. Branion* (1970), 47

Ill.2d 70, 265 N.E.2d 1, the Illinois Supreme Court specifically held that evidence that Dr. Branion was having an illicit affair with a nurse was proper as tending to prove motive for the killing of his wife.

We next consider the explanation of defendant as to the disappearance of his wife. Upon inquiry regarding her whereabouts, he advised several different parties that his wife was "out shopping" or "in the yard". Only when the police officer was so advised that she was "out shopping", and when the officer stated that he would wait for her, did defendant make another explanation. He then told the officer that he and his wife had separated and that she had gone to Chicago and was staying with her brother. This, of course, was untrue, as indicated above, and at that point the defendant disappeared for about a year until he was apprehended in Florida.

■■ "Flight" likewise has repeatedly been held to be an element of guilt that may be considered by the jury. This is particularly true in the instant case where the defendant left his home in the country—even to the extent of leaving animals in the house. The supreme court in *People v. Lobb* (1959), 17 Ill.2d 287, 295, 161 N.E.2d 325, 330 stated: "It is the settled law of this State that the fact of flight is a circumstance which may be considered by the jury, in connection with all the other evidence in the case, as tending to prove guilt." See also *People v. Dukes* (1957), 12 Ill.2d 334, 343; *People v. Rossini* (1962), 25 Ill.2d 617, 621.

It is also to be noted that another element in the web of circumstantial evidence woven as to the guilt of the defendant was the fact that a neighbor heard a quarrel going on in the home of the defendant between a man and a woman approximately 2 days before the wife's disappearance. It is true that the witness was unable to distinguish the voices of the defendant and his wife. While this testimony is not conclusive, it was properly considered by the jury.

Defendant next contends that reasonable doubt exists as to the cause of death, whether it was through accident or by criminal agency. He raises the hypothesis that the deceased might have committed suicide because she knew of her husband's affair, and that the defendant discovered the body and buried it. The defendant did not testify. As counsel points out—the hypothesis of innocence must be reasonable.

The doctor who examined the body after the accidental exhumation testified that the cause of death was strangulation or suffocation caused by the breaking of the hyoid bone in the neck located under the jaw. Upon cross-examination counsel inquired if the hyoid bone could have been broken by the passage of heavy equipment over the grave, and the doctor stated he could rule, as a medical certainty, that the equipment could not break the hyoid bone without also breaking

the jaw. Defense counsel argues that a rock or root between the jaw and the hyoid bone could have been the cause of the fracture of the hyoid bone. There is no evidence to that effect, the evidence being that the body was buried in "loose porous soil." In *People v. Huff* (1963), 29 Ill.2d 315, 319, the court stated: "We agree with the defendant that it was incumbent upon the State to prove beyond a reasonable doubt that defendant caused or contributed to the injury to the head which caused the child's death." The defendant therein testified that he had never struck the child on the head. Nonetheless the court went on to hold:

> "A conviction may be based upon circumstantial evidence, and this court has held that the manner of death and the means by which it was inflicted may be inferred from the circumstances proved. (*People v. Bartell*, 386 Ill. 483.) The fact that the circumstantial evidence relied upon must not give rise to any reasonable hypotheses under which the defendant could be innocent of the crime charged, [citations], does not mean that the trier of fact is 'required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt.'" (29 Ill.2d at 320.)

And in *People v. Russell* (1959), 17 Ill.2d 328, 331, the court stated the same principle in the following fashion:

> "It is possible, of course, to conjure up hypotheses that are inconsistent with the defendant's guilt as accessory or principal, as it is in any case in which judgment rests on circumstantial evidence.
>
>     *   *   *
>
> But the requirement that the defendant's guilt be proved beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it."

Likewise in *People v. Bartell* (1944), 386 Ill. 483, 489, the court stated: "Direct testimony is not required to prove the means causing the death of a deceased person. The means and manner of death may be inferred from the circumstances proved." (See also *People v. Kinzell* (1969), 106 Ill.App.2d 349.) From the record herein we find that the jury was justified in finding beyond a reasonable doubt that the cause of death was strangulation or suffocation caused by the defendant. *People v. Marino* (1970), 44 Ill.2d 562, 580, 256 N.E.2d 770, 780.

■■■ The second contention of the defendant is that the trial court erred in the admission of a picture of a rope found in the bedroom closet of the defendant. It appears that the rope itself had disappeared. The basis for the objection of the admission of this picture is that there was

no direct evidence that the rope was used in the alleged strangulation or suffocation of the victim. The Illinois Supreme Court, however, has on several occasions ruled that a weapon found in the possession of the accused may be introduced into evidence even though there is no direct evidence that it was the cause of death. In *People v. Moore* (1969), 42 Ill.2d 73, the defendant was arrested 6 months after the crime, and a .16-gauge shotgun found in his possession was admitted into evidence although it was not positively identified as the death weapon. The court went on to say:

> "There is no clear evidence of the weapon actually used in this homicide, although it is clear that it was a shotgun. We have consistently held that a weapon found upon a defendant suitable for the commission of the crime charged is proper evidence even though there is no showing that it was the actual weapon used. *People v. Magby*, 37 Ill.2d 197; *People v. Ostrand*, 35 Ill.2d 520; *People v. McCasle*, 35 Ill.2d 552; *People v. Lenhardt*, 340 Ill. 538." (42 Ill.2d at 78.)

The doctor herein testified that a rope tied around the neck of the victim, with a knot in it, or with two fingers in between the rope and the neck "may do this damage", *i.e.*, break the hyoid bone upon exertion of pressure. It can thus be seen that the rope was in fact suitable for the commission of the crime charged. We therefore find no error in the admission of the picture of the rope found in the bedroom closet of the defendant.

Lastly, defendant contends that the prosecutor's closing remarks denied the defendant a fair trial. No objection was made to the remarks complained of and defendant contends that we should consider them under the plain error doctrine. As recently as *People v. Hanson* (1972), 53 Ill.2d 79, 82, 289 N.E.2d 611, 613, the supreme court held that where objection is not made in the trial court, the objection is not available upon review. Nevertheless, we have examined the record and find the remarks were not of a nature that deprived defendant of a fair trial.

■■ Summarizing the evidence adduced by the State it is difficult to see how the jury could have done other than find the defendant guilty under the facts in this case. As set forth above, a neighbor testified that she heard a quarrel going on between a man and a woman in defendant's residence a few days before June 28. The same neighbor testified that on the night of June 28 she saw the defendant's car leave his residence at approximatly 4 in the morning and return about an hour later. The defendant on numerous times lied to various people as to his wife's disappearance; he lied as to her being at her brother's home in Chicago. After the police came to his home he hurriedly disappeared, leaving two

cats and a dog inside his house. Over a year later defendant was apprehended in Florida and returned to Illinois. Additionally, the defendant was having an intimate affair with another woman prior to and after the death of his wife and wanted to marry the other woman.

The Supreme Court in *People v. Benedik* (1973), 56 Ill.2d 306, recently considered a case quite similar to the one before us, but where the defendant testified as to his innocence. In commenting on that situation the court said:

> "If the jury disbelieved his testimony, as they were entitled to do, they could reasonably have reached the conclusion that the physical evidence, the nature of the wounds on Kresmery's body, the defendant's attempt to hide the bodies and destroy other evidence, his flight and his apparent motive established his guilt beyond a reasonable doubt. It is not necessary that the jury disregard the inferences which naturally flow from this evidence, nor is the trier of fact 'required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt.' *People v. Russell*, 17 Ill.2d 328, 331." 56 Ill.2d at 309.

A case, similar in facts to the one before us is found in *People v. Scott* (1960), 176 Cal. App.2d 458, 1 Cal. Rptr. 600. The defendant therein was charged with murdering his wife; the distinguishing difference in that case and the one before us is that the body of his wife was never found. The case was tried by a jury who found the defendant guilty and the California District Court of Appeals affirmed. The California court cited two landmark cases where the conviction of murder was upheld even though the body was never discovered. (*The King v. Horry* (1952), N.Z.L.R. 111, and *Regina v. Onufrejczyk* (1955), 1 Q.B. 388.) In *Scott*, several striking similarities to the instant case were presented, *viz.*, the defendant lied as to the disappearance of his wife, motive was established and the defendant fled to Canada until returned by the authorities.

We have carefully reviewed the record and evidence in this case, which may be aptly termed a circumstantial evidence homicide, and find that the evidence is not only consistent with defendant's guilt, but inconsistent with any reasonable hypothesis of innocence. The conviction is affirmed.

Affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.