THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MALCOLM FRAZIER, Defendant-Appellant.

Second District   No. 83—11

Opinion filed December 28, 1984.

Michael M. Melius, Public Defender, of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Marlene V. Newton, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Malcolm Frazier, was convicted by a jury in the circuit court of Lake County of the offense of involuntary manslaughter, and the trial court sentenced him to a five-year term of imprisonment.

On appeal, the defendant raises these four issues: (1) whether the trial court erred in refusing to instruct the jury with the second paragraph of the circumstantial evidence instruction (Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (2d ed. 1981)); (2) whether the trial court erred in admitting in evidence a wooden stick and cumulative, graphic medical testimony; (3) whether he was proved guilty beyond a reasonable doubt; and (4) whether the five-year sentence was an abuse of the trial court's discretion.

The defendant was charged with the offense of involuntary manslaughter following the death of his 18-month-old natural daughter, Tasha Teasley. Tasha died 10 days after she was brought to the hospital; the cause of death was determined to be traumatic subdural hema-

toma—bleeding on the surface of the brain—as evidenced by multiple areas of subgaleal hemorrhage resulting from excessive multiple traumatic events to the head. The defendant explained that Tasha had been playing, jumping, and had fallen off the bed—which consisted of a mattress and box spring placed on the floor—and possibly had fallen onto a set of weights or an end table. In his statement to a North Chicago police officer concerning the incident, he admitted he had disciplined Tasha earlier that day for not eating her breakfast and her lunch by whipping her on the arms and legs with his hand and with an afro comb. During taping of his statement, he added that he had also angrily "backhanded" her during the day, knocking her to the floor, because she had "messed on herself."

Witnesses at trial testified to Tasha's overall bodily condition, noting numerous areas of new, red bruises and several scarred areas indicating prior injuries that had healed. Two medical witnesses testified Tasha's injuries were compatible with the "battered child syndrome."

### CIRCUMSTANTIAL EVIDENCE INSTRUCTION

■ The defendant contends the evidence against him at trial was purely circumstantial, and the court erred reversibly in refusing his tendered instruction, which included the second paragraph of IPI Criminal No. 3.02, to wit:

> "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

The main point in contention here is whether the defendant's statements to the police and to a witness, Allan Friedman, are direct evidence. If so, then the court did not err in refusing to instruct the jury as provided in the second paragraph of IPI Criminal No. 3.02. The defendant argues that where an accused's statement is in the nature of a confession, that is, it includes an admission of participation in the offense, then the statement is direct evidence. However, where the defendant's statement is exculpatory, as here, it is not direct evidence. In support of that proposition he relies on *People v. Garcia* (1981), 95 Ill. App. 3d 792, and argues that the evidence shows he presented an "eminently reasonable theory of innocence" at trial; that Tasha fell and hit her head. He contends his theory was corroborated by evidence that a radiator, barbells and a table were observed located next to the bed in the apartment. Further, that his theory was corroborated by the testimony of Doctor Choi, who performed the autopsy on Tasha, and Doctor Paula Jaudes, a pediatrician, professor of pediatrics, and chief of the child negligence and abuse program at the University of Chicago

and La Rabida Children's Research Center.

The State argues in response that any statements made by the defendant are to be considered direct evidence. (*People v. Spataro* (1978), 67 Ill. App. 3d 69.) It points out in *People v. Garcia* (1981), 95 Ill. App. 3d 792, cited by the defendant, that the court determined both paragraphs of the instruction should have been given, but it nevertheless affirmed the defendant's conviction of involuntary manslaughter of his five-month-old son. It did not appear to the *Garcia* court that the instructional error denied the defendant justice or produced a guilty verdict, since there was no reasonable theory of innocence consistent with the evidence presented where the defendant's explanation was that he and the child were sleeping on the couch and he awoke to find the child on the floor, injured.

> "Circumstantial evidence is the proof of facts or circumstances which gives rise to a reasonable inference of other facts which tend to establish the guilt or innocence of a defendant." (*People v. Evans* (1981), 87 Ill. 2d 77, 83; see also *People v. Rhodes* (1981), 85 Ill. 2d 241.)

The second paragraph of IPI Criminal No. 3.02 should be given "when the proof of guilt, as to each element of the offense, is circumstantial." (*People v. Evans* (1981), 87 Ill. 2d 77, 83.) In affirming the reversal of the convictions of Evans' codefendant, John Dorris, the court found the record revealed *no direct evidence of fact* upon which the jury could arrive at the conclusions advanced by the State to establish his accountability for Evans' acts. "Direct evidence" is proof of the existence of a fact in issue without the necessity of inference or presumption, or evidence of a fact perceived by means of a witness' senses. (*People v. Stokes* (1981), 95 Ill. App. 3d 62, 68; *People v. Garcia* (1981), 95 Ill. App. 3d 792, 796.) It has been held that, where the defendant offered explanations of how incidents occurred, any statements made by the defendant be considered direct evidence. (*People v. Triplett* (1980), 87 Ill. App. 3d 763, 770; *People v. Spataro* (1978), 67 Ill. App. 3d 69, 75; *People v. Fletcher* (1976), 40 Ill. App. 3d 537, 542.) The earliest of those cited cases, *Fletcher*, relied in turn on *People v. Brown* (1974), 56 Ill. 2d 312, *rev'd & rem. on other grounds* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254. In that case, the court found the second paragraph of the instruction was properly refused where the defendant's own statements provided direct evidence of his participation in the crime.

Accordingly, not just any statement or admission made by the defendant constitutes direct evidence. Where the exculpatory statements of a defendant do not establish participation in the crime or an

element of the offense, they are not the "direct evidence" which obviates the need to give the second paragraph of the instruction. *People v. McLaughlin* (1984), 121 Ill. App. 3d 1080, 1085; *People v. Garcia* (1981), 95 Ill. App. 3d 792.

█ The offense of involuntary manslaughter involves four elements: (1) defendant must have done an act, (2) which caused the death of another, (3) and his act, which was such that it was likely to cause death or great bodily harm, (4) was performed recklessly. *People v. York* (1978), 57 Ill. App. 3d 243; Ill. Rev. Stat. 1983, ch. 38, par. 9—3.

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. ***" Ill. Rev. Stat. 1983, ch. 38, par. 4—6; see also *People v. Fernetti* (1983), 117 Ill. App. 3d 44.

The defendant here describes that he heard "the noise *** sounded like something had fell [*sic*] *** sounded like she had—I don't know what—caused the stand to fall down *** something like that. *** When I came in [the living room area] again, she had knocked herself out." A similar statement made in another case, in addition to medical testimony that the victim's loss of consciousness would have occurred within minutes of the fatal head injury, caused this court to conclude there was sufficient direct evidence to warrant the trial court's refusal to give the second paragraph of the instruction. (*People v. Jenkins* (1983), 117 Ill. App. 3d 33, 42.) This case presents even stronger facts warranting the same conclusion in that the defendant additionally admitted that he disciplined 18-month-old Tasha twice during the day in question by "whipping her with his hand and comb" on the arms and legs, and that he "backhanded" her, causing her to fall to the floor. Certainly the act of an adult "backhanding" an 18-month-old child so as to knock her to the floor is conduct which establishes a conscious disregard of a substantial and unjustifiable risk that the act was likely to cause great bodily harm, or even death.

We conclude the evidence against the defendant was not entirely circumstantial and, therefore, the court did not err reversibly in refusing the instruction complained of.

### PREJUDICIAL AND CUMULATIVE EVIDENCE

█ The defendant contends the court admitted irrelevant and cumulative evidence which substantially prejudiced his right to a fair trial. Specifically, he charges it was error for the court to admit in evi-

dence a three- to four-foot-long stick which testimony at trial showed had "some tape wrapped around it at one end, with some sort of braided plastic wire-like material on the end." Additionally, he charges he was substantially prejudiced by the large quantity of cumulative testimony presented which detailed the child's injuries. He points out that seven witnesses testified who described the injuries in detail, five of whom testified on the same point—that the baby's head was soft and mushy to the touch, "a particularly gruesome piece of evidence."

As a general rule, the admission of evidence is largely within the discretion of the trial judge, whose determination will not be interfered with unless there has been an abuse to the prejudice of the defendant. (*People v. Greer* (1980), 79 Ill. 2d 103, 117; *People v. Stocks* (1981), 93 Ill. App. 3d 439.) Evidence is required to be relevant and material (*People v. Miller* (1977), 55 Ill. App. 3d 136, 139), and should be excluded where it would serve no useful purpose (*People v. Lewis* (1976), 38 Ill. App. 3d 995, 998), and " 'if it has no legitimate bearing upon, or relation to, any fact or issue in the case.' " (*People v. White* (1980), 90 Ill. App. 3d 1067, 1072.) Admissibility may also depend upon whether the probative value of the evidence outweighs its prejudicial effect to the defendant. (*People v. Cruz* (1979), 71 Ill. App. 3d 76.) "Physical" or "real" evidence, as opposed to merely demonstrative evidence, refers to some object which has a direct part in the incident in question. (*Smith v. Ohio Oil Co.* (1956), 10 Ill. App. 2d 67, 75.) Such evidence may be admitted, providing there is evidence to connect the object with the defendant and with the crime. (*People v. Chatman* (1981), 102 Ill. App. 3d 692; *People v. Miller* (1968), 40 Ill. 2d 154.) The supreme court has held that a weapon found upon a defendant suitable for the commission of the crime charged is proper evidence even though there is no showing that it was the actual weapon used. *People v. Moore* (1969), 42 Ill. 2d 73, 78, *aff'd* (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562; *People v. Lopes* (1974), 17 Ill. App. 3d 986, 992-93.

There was substantial evidence presented concerning fresh bruise marks on the child's face and body, including one red bruise, four inches long, extending up the cheekline to the child's temple and around her cheekbone. Multiple areas of subgaleal hemorrhage were attributed to excessive multiple traumatic events to her head. Although the defendant denied he hit Tasha with the stick, the evidence indicates it was as suitable for producing some of the injuries observed as was a belt, and he admitted he had at least on one occasion hit her with the flat side of a belt. He also admitted the stick was from his apartment, and that a friend had given it to him saying, "[J]ust in case somebody breaks in you can use the stick." Doctor Jaudes testified the several

hypopigmented loop-shaped marks on Tasha's skin could have been caused by a belt or cord doubled over on itself, or by the stick at issue here.

We conclude the court did not abuse its discretion in admitting the stick, since it was connected with the defendant and was suitable for producing at least some of the injuries observed on the child's head.

It is the general rule that a trial court has the power to exclude cumulative or repetitious testimony (*People v. Godbout* (1976), 42 Ill. App. 3d 1001), and the extent to which cumulative evidence may be received rests within the discretion of the trial court. *People v. Lee* (1980), 86 Ill. App. 3d 922, 937, *rev'd on other grounds* (1981), 87 Ill. 2d 182; *People v. Nahas* (1973), 9 Ill. App. 3d 570.

The defendant raises the issue of prejudice due to cumulative testimony in three areas: the testimony of various medical personnel, doctors, and a lay witness concerning Tasha's injuries; testimony by Allan Friedman of the Department of Children and Family Services regarding his interview with the defendant; and the testimony of two police officers regarding the search of the defendant's apartment.

■ As to these last two witnesses, their testimony was neither objected to at trial nor was the issue regarding their testimony raised in a post-trial motion and, as such, the issue has been waived and the defendant is barred from arguing this for the first time on appeal. (*People v. Roberts* (1979), 75 Ill. 2d 1.) Additionally, we note defendant's post-trial motion only referred specifically to the cumulative testimony of the "doctors" and Allan Friedman, and the record shows the only objection made at trial and in the defendant's post-trial motion was with regard to Mr. Friedman's testimony. The defendant's failure to object at trial or to move to strike testimony he considered cumulative at trial deprived the trial court of the opportunity to rule on any of the alleged errors at trial and, thus, operates as a waiver. (*People v. Brown* (1982), 107 Ill. App. 3d 576; *People v. Carlson* (1980), 79 Ill. 2d 564, 575-77.) Notwithstanding the lack of objection at trial, a reviewing court will grant relief if the trial error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from such error. *People v. Carlson* (1980), 79 Ill. 2d 564, 577.

■ ■ Based on our review of the record, we conclude the testimony of the doctors and the lay witnesses concerning the child's injuries, although overlapping at times, was not cumulative and its admission did not deny the defendant real justice. Although the fact of the injuries was not disputed by the defendant, the cause of the injuries was the issue in contention, and the State has a right to prove each and every element of the offense. (*People v. Kuntz* (1977), 52 Ill. App. 3d

804; *People v. Christen* (1980), 82 Ill. App. 3d 192.) The testimony of each of the witnesses now claimed to be cumulative was relevant to the identity, age, and physical condition of the victim, the method and manner of her death, the location and extent of her wounds, the degree and type of force required to produce such injuries and cause of death. Each of the witnesses' testimony brought out an additional fact or facts in the case.

Notably, after having unsuccessfully objected to presentation of Allan Friedman's testimony on the basis it would merely be cumulative and add nothing new to the case, defense counsel did not make a follow-up motion to strike after Friedman testified. The reason apparent for this in the record is that Friedman's testimony included the "new fact" that the defendant admitted to having hit Tasha in the past, thus accounting for some of her bruises, and that he hit her with a belt in an attempt to toilet train her.

The State is permitted to bolster its case with corroborative evidence to the extent such evidence is otherwise relevant, and the possible prejudice of any unnecessary accumulation of repetitive testimony is a matter for the discretion of the trial court. *People v. Robinson* (1982), 104 Ill. App. 3d 20, 27, 29, *cert. denied* (1983), 459 U.S. 1228, 75 L. Ed. 2d 469, 103 S. Ct. 1235.

In sum, we conclude the evidence claimed here by the defendant to have been cumulative and prejudicial was not, nor does the record show any abuse of the court's discretion in admitting such evidence.

## CORPUS DELICTI

Defendant contends the State's evidence failed to prove that the child died by reason of criminal agency of the defendant and, thus, failed to prove the *corpus delicti* of the offense beyond a reasonable doubt. He argues the State's evidence showed only that the child was injured while she was with the defendant and that the defendant had disciplined her. We believe the evidence at trial conclusively established his guilt beyond a reasonable doubt.

The term *"corpus delicti,"* literally "body of the offense," means the fact that the crime charged has been committed by someone. (The Random House Dictionary of the English Language 327 (1967); 29 Am. Jur. 2d *Evidence* sec. 149 (1967).) To prove the *corpus delicti* in a criminal homicide, the State must prove the facts of (1) death, (2) caused by the criminal agency of another. (*In re Thur* (1980), 80 Ill. App. 3d 592, 596; *People v. Wilbourn* (1978), 56 Ill. App. 3d 1022, 1026; *People v. Lueder* (1954), 3 Ill. 2d 487, 489.) If the evidence is all or largely circumstantial, it should be sufficiently compelling to produce a moral and

reasonable certainty that the crime was committed and that the defendant committed it. (*People v. Younge* (1980), 83 Ill. App. 3d 305, 308; *People v. Mundorf* (1968), 97 Ill. App. 2d 130, 134.) When the defendant elects to testify in his own defense, and when he elects to explain the death of the deceased, it is incumbent upon him to tell a reasonable story, or be judged by its improbability. *People v. Williams* (1978), 67 Ill. App. 3d 524, 529; *People v. Neal* (1968), 98 Ill. App. 2d 454.

The defendant testified concerning his disciplining of Tasha during the morning and early afternoon of the day in question, including the fact that he spanked her with his hand and with an afro comb. The record also shows he testified he hit her with the back of his open hand, causing her to fall on the floor; in his statement to Allan Friedman, regarding this incident, he said he "backhanded" Tasha and watched her fall backward. Further, he testified that this backhanding occurred when he was upset and "just a little bit mad" with Tasha because she had "messed" on herself and was playing in it, which necessitated bathing her, and wiping off the rug. The defendant also told Friedman and testified at trial that he hit Tasha on one earlier occasion with a belt when he was trying to toilet train her.

The defendant's testimony concerning the incident was that after he had bathed Tasha and cleaned the rug, he told her to go back into the living room area to play, which she did. The living room area contained her bed, which consisted of a king-size mattress and box springs placed on the floor. Positioned near her bed was a radiator, a set of barbells, a table, and a night stand. The defendant, meanwhile, went back to his room and lay down. He heard Tasha playing in the living room and then he heard a noise which "sounded like something had fell [*sic*]. Sounded like she had—I don't know what—caused the stand to fall down ***. When I came in [the living room] again, she had knocked herself out." He testified at trial that she had not fallen by the radiator or the barbells, but by the table. He testified her eyes were closing, and that he picked her up, shook her, called her name, and slapped her face a couple of times in an attempt to revive her. When she did not respond, he gave her mouth-to-mouth resuscitation and splashed water on her face. He then laid her down on the bed and went downstairs next door to tell his landlady that Tasha had fallen and hurt herself.

Doctor Choi performed the autopsy and determined that the cause of Tasha's death was traumatic subdural hematoma as evidenced by multiple areas of subgaleal hemorrhage resulting from excessive multiple traumatic events to the head, all of which contributed to her death. If Tasha had been jumping up and down on her bed and had fallen off

and hit an object or the floor, the expected injury—although of the type Tasha exhibited—would have been a single one, and that the chance was "remote" that such injuries occurred in a fall.

Doctor Jaudes expressed a similar opinion, in that it would seem unlikely that the trauma to the head would have been caused by a single event such as a fall. Further, if Tasha had struck a hard, stationary object as a result of the fall, it would be usual to expect a skull fracture, although such a fracture may not occur in very young children. Doctor Jaudes also testified that a subdural hematoma could be caused by a fist or a blow by the hand of an adult.

On the whole, the evidence is sufficiently compelling to produce a moral and reasonable certainty that the crime was committed and that the defendant committed it. Hence, the State sustained its burden of proof, and no reversal is warranted.

### Sentencing

■ The defendant's final contention is that the court abused its discretion in sentencing him to the maximum term available for one convicted of involuntary manslaughter, five years in the Department of Corrections. He points out the record shows that he had no prior criminal history, and the presentence report, which he characterizes as very positive in its tone, indicated that he was a suitable candidate for probation. The presentence report set forth numerous alternatives to imprisonment, including several community resources for therapy and rehabilitation assistance. No evidence in aggravation was presented, and the prosecutor's argument in aggravation emphasized deterrence, the harm caused the very young victim, the difficulty in striking a balance between "the society interests in retribution and society's interest in rehabilitation," and the fact that even though "rehabilitation has fallen on [sic] disfavor within the last 10 years or so, I [the prosecutor] suppose it is something that cannot be ignored in a case like this."

Actually, the picture painted by the presentence report and the testimony of the defendant's mother is quite different from that drawn by the defendant.

The presentence report showed that the defendant had entered high school in 1976 and withdrew in 1977, due to poor grades and excessive absenteeism.

The defendant's mother testified the only time in his life he ever worked was once when he delivered papers and once when he worked at the White Sox Park. The defendant told the probation officer his only employment was for a few weeks in a restaurant on 47th Street. Presumptively, this occurred at least two years ago, when he came to

Waukegan.

The defendant argues that if granted probation he would have the support of his mother. We note the record shows she is a domestic worker who was released from an alcoholic rehabilitation program a short time after the death of Tasha. It was her testimony that she paid the defendant's rent and that while he cared for Tasha during the day, that she, after her work as a domestic, came to the apartment, did the cleaning of the apartment and cooked for the defendant and Tasha.

It is not difficult to see how the trial judge could deny probation to the defendant with such a background, or, more aptly, lack of any background showing an ability to function as a citizen.

The trial judge noted in his summation at the sentencing that he considered the evidence at trial, the presentence report, the evidence in mitigation, the arguments as to sentencing alternatives, and he afforded the defendant the opportunity to make a statement in his own behalf, which the defendant declined.

In rhetorical response to the public defender's query as to what useful purpose would be served by sending the defendant to the Illinois State Penitentiary, the trial judge pointed out such incarceration is for the purpose of punishment. In the rhetorical context this was stated, we do not believe, as is argued by the defense, that this meant that the trial judge discounted any and all other factors in imposing the sentence of five years' imprisonment.

A sentence will not be reduced unless it is shown that the trial court abused its discretion. (*People v. Cox* (1980), 82 Ill. 2d 268.) The trial judge in the case at hand, noting the nature of the offense and the background of this offender, had ample justification for the term imposed. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) We find no abuse of sentencing discretion.

The judgment and sentence of the circuit court of Lake County are affirmed.

Affirmed.

NASH, P.J., and SCHNAKE, J., concur.