THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARY O. CISEWSKI, Defendant-Appellant.

First District (4th Division)   No. 84—1168

Opinion filed May 15, 1986.—Rehearing denied June 9, 1986.

James J. Doherty, Public Defender, of Chicago (Georgeen M. Carson, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Richard A. Stevens, and Maureen O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, Mary O. Cisewski (defendant) was convicted of the voluntary manslaughter of her husband, Donald, and sentenced to five years' imprisonment. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(b), 1005—8—1(a)(4).) Defendant appeals from her conviction, raising the following questions for our review: 1) whether the State's failure to disclose prior to trial a supposed inculpatory statement allegedly made by the defendant constituted reversible error; 2) whether the prosecution's statements during rebuttal closing argument deprived defendant of a fair trial under the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends.

VI, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2). We affirm.

BACKGROUND

Evidence produced at trial established that commencing in the early 1970's, defendant began to suffer from paranoid beliefs that she was being harassed by police, tenants, lawyers and others whom she believed were part of a conspiracy against her. In 1979 or 1980, she purchased and registered a firearm in order to protect herself.

Defendant and Donald were married in 1981. Donald was aware of defendant's "harassment" beliefs at the time of the marriage. Sometime thereafter, defendant began to suspect that her husband was part of the conspiracy against her. In early 1982, her fears had magnified to the point where she believed that there was a plot to have her killed and she suspected that Donald would attempt to kill her.

On February 9, 1982, defendant came home from work and discovered that the gun was missing from the location in the house where she had previously placed it. Her husband claimed he did not know where she had put the weapon.

The following evening Donald produced the box of bullets to the gun. Defendant became frightened and believed that if he had taken the bullets he also must have taken the firearm. She found the loaded weapon upon a search of Donald's automobile later that day.

Within the next few days, defendant's mental condition deteriorated and her fears of Donald's plan to kill her intensified. By Friday night she was hysterical. When Donald came home from work late that evening, he and defendant began to argue. Donald went into the dining room of the house and sat down. Mary took the loaded gun from a drawer in the living room where she had hidden it a few days earlier, and went into the dining room with the gun in her hand. She testified at trial that she intended only to scare her husband and that she did not intend to harm him. Defendant showed the weapon to Donald and asked him if he thought this was funny. She said to him, "Your problem is you think everything is funny." Defendant then shot her husband in the head and abdomen. She had no memory of having fired any shots. She testified that she apparently fainted and that when she came to, she realized that the gun had been fired. She walked into the kitchen, put the gun down, and called the police.

Defendant's defense at trial was that she either had an unreasonable belief in self-defense (voluntary manslaughter) or that she acted with reckless disregard for Donald's safety (involuntary manslaugh-

ter). She testified at trial on her own behalf. A psychiatrist called by the defense testified that defendant suffered from paranoia.

The jury found defendant guilty of voluntary manslaughter. The trial court entered a finding of guilty as to that charge and sentenced defendant to five years' incarceration. Defendant's timely appeal followed.

OPINION

I

Defendant argues that the trial court erred in its denial of defendant's motion for a mistrial based upon the State's failure to disclose prior to trial a statement allegedly made by defendant. Defendant claims that the State should have disclosed an alleged telephone call by defendant to her deceased husband's employer requesting the proceeds of his life insurance policy and his pay check.

The record shows that the State first inquired of this phone call during its cross-examination of defendant at trial. The defendant objected to this line of questioning and made a motion for a mistrial. The objection was overruled and the trial court denied defendant's motion for a mistrial. Thereafter, during the State's presentation of rebuttal evidence, the trial court permitted the State to introduce the testimony of an employee where Donald had worked. This witness stated that following Donald's death, a person who identified herself as defendant called and asked about Donald's pay check and life insurance proceeds. The trial court also allowed defendant to present surrebuttal evidence showing that the defendant was incarcerated at the time of the phone call, that she could only make collect telephone calls, and that Donald's employer did not accept collect calls.

In pertinent part Illinois Supreme Court Rule 412 requires the disclosure of "any oral statements made by the accused *** and a list of witnesses to the making and acknowledgement of such statements." (87 Ill. 2d R. 412(a)(ii).) The rule is intended to encompass statements made to anyone which might have a bearing on the defendant's guilt or innocence. (*People v. Weaver* (1982), 92 Ill. 2d 545, 558, 442 N.E.2d 255.) Several factors are relevant to the determination of whether the State's failure to disclose amounted to reversible error, including the closeness of the evidence against the defendant and the strength of the undisclosed evidence. (*People v. Weaver* (1982), 92 Ill. 2d 545, 560-61, 442 N.E.2d 255.) In order to constitute ground for reversal of a conviction, the nondisclosure must have prejudiced the defendant's presentation of his or her defense.

*People v. Stewart* (1984), 105 Ill. 2d 22, 64-65, 473 N.E.2d 840, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 283, 105 S. Ct. 2666.

■■ In our view the State's introduction without prior disclosure of defendant's inquiry regarding her husband's pay check and life insurance proceeds was clearly error. We are unpersuaded by the State's claim before this court that the prosecutor's conduct was acceptable because the evidence was offered to prove that defendant had a motive to kill her husband and therefore was guilty of his murder. The State's contention misses the mark, in our opinion, since the evidence had the additional and rather obviously deleterious effects of calling into question both the credibility of the defendant's testimony at trial as well as the validity of her theories of defense (*i.e.*, voluntary or involuntary manslaughter). We observe that although the evidence of defendant's having shot her husband was not itself close in the case at bar, the issue was a closer one with regard to whether the defendant had an unreasonable belief in self-defense when she shot her husband (see Ill. Rev. Stat. 1983, ch. 38, par. 9—2(b); *People v. O'Neal* (1984), 104 Ill. 2d 399, 404-05, 472 N.E.2d 441), or whether she acted with reckless disregard when she shot him (see Ill. Rev. Stat. 1983, ch. 38, par. 9—3; *People v. Frazier* (1984), 129 Ill. App. 3d 704, 708, 472 N.E.2d 1183). Because the defendant testified at trial that she had not intended to shoot her husband, the evidence of the telephone conversation certainly had some bearing on which defense the jury found more acceptable. As a result we cannot agree with the State's argument that the evidence's relevance was limited to the question of whether defendant was guilty of murder.

■■ Although we conclude that the evidence regarding the telephone conversation should not have been admitted at trial, our review of the record constrains us to determine that there is insufficient showing of prejudice to the defendant which would warrant reversal. The State urged the jury to find defendant guilty of murder. The closing argument of the defense was devoted almost exclusively to the theory that defendant was guilty of voluntary manslaughter. In fact the defense attorney posited to the jury that "the voluntary manslaughter instruction *** is the most pertinent one for you to consider," and subsequently stated, after going through each of the elements of voluntary manslaughter in light of the evidence produced at trial, that "if that's not Mary Cisewski in a nutshell, I don't know what is." Based upon this record, it is apparent that the defendant argued that she was guilty of voluntary manslaughter, not murder; this is precisely the verdict which the jury returned. As a result we cannot conclude that the introduction of testimony regarding the tele-

phone conversation prejudiced defendant in the presentation of her defense. Nevertheless we parenthetically emphasize our agreement with the argument of the defendant on appeal that the prosecutor's conduct here amounted to an attempt to procure a "trial by ambush," which we unequivocally condemn. See 87 Ill. 2d R. 415(g); *People v. Weaver* (1982), 92 Ill. 2d 545, 558-59, 442 N.E.2d 255.

II

Defendant also contends that certain statements made by the prosecution during rebuttal closing argument deprived her of a fair trial.

It is well settled that a defendant is entitled to a fair trial free from prejudicial comments by the prosecution. (*People v. Cowherd* (1983), 114 Ill. App. 3d 894, 900, 449 N.E.2d 589; *People v. Martin* (1975), 29 Ill. App. 3d 825, 828, 331 N.E.2d 311.) Nevertheless a prosecutor is generally permitted great latitude in closing argument (*People v. Smith* (1982), 111 Ill. App. 3d 895, 906, 444 N.E.2d 801), and the determination of whether this scope is exceeded depends upon the facts and circumstances of an individual case. (*People v. Cruz* (1983), 119 Ill. App. 3d 868, 882, 457 N.E.2d 1281, *appeal denied* (1984), 99 Ill. 2d 531.) In order to determine whether a prosecutor's closing comments are prejudicial, "reference must be made to the content of the language used, its relation to the evidence, and the effect of the argument on the rights of the accused to a fair and impartial trial." (*People v. Brown* (1983), 113 Ill. App. 3d 625, 631, 447 N.E.2d 1011.) A defendant is entitled to a new trial where the improper remarks substantially prejudiced him or constituted a material factor in his conviction. *People v. Smylie* (1981), 103 Ill. App. 3d 679, 686, 431 N.E.2d 1130, *appeal denied* (1982), 91 Ill. 2d 564.

The record shows that the prosecution stated to the jury, "Let's take a real close look at the defense of paranoia *** and we'll show you it's all a fabrication." We note that comments to the effect that defense counsel fabricated a defense theory are improper unless based upon some evidence. (*People v. Emerson* (1983), 97 Ill. 2d 487, 497, 455 N.E.2d 41.) However, the trial court sustained the defendant's objection to the commentary and instructed the jury to disregard it. We conclude that any prejudice caused by the comments was sufficiently cured by the trial court's cautionary instruction. See *People v. Johnson* (1984), 122 Ill. App. 3d 532, 538, 461 N.E.2d 585.

The prosecution also argued in its rebuttal that defendant's defense was premised on defendant's belief that if she convinced the jury that she was paranoid, "they [the jury] can find me [the defend-

ant] guilty of voluntary manslaughter and I [the defendant] can walk out of that door today. I [the defendant] can be home before the jurors are home, if they find me [the defendant] guilty. It is a fact, ladies and gentlemen." Such comments were clearly improper, as it is impermissible for counsel to argue the effect of the verdict when the jury is not involved in fixing the punishment. (*People v. Galloway* (1963), 28 Ill. 2d 355, 362, 192 N.E.2d 370, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665; *People v. Shumate* (1981), 94 Ill. App. 3d 478, 483, 419 N.E.2d 36, *appeal denied* (1981), 85 Ill. 2d 573.) Moreover the prosecution cannot misinform or mislead the jury on the consequences of a finding of guilty on any of the charges. (*People v. Stack* (1984), 128 Ill. App. 3d 611, 620, 470 N.E.2d 1252; *People v. Crossno* (1981), 93 Ill. App. 3d 808, 821, 417 N.E.2d 827.) Although the prosecutor's comments were clearly improper, we cannot say that these improper comments amounted to prejudicial argument which would warrant the granting of a new trial. It is clear that the prosecutor's remarks here were intended to persuade the jury to return a verdict of guilty of murder rather than voluntary manslaughter. Since the defendant was convicted of manslaughter, however, the comments did not prejudice the jury in its determination of defendant's guilt.

Lastly the prosecution stated in rebuttal, "Now is the time, ladies and gentlemen, to remove the cloak of innocence from this defendant and join Donald in saying 'No Mary, no Mary'." Although this remark was improper (see *People v. Ray* (1984), 126 Ill. App. 3d 656, 661, 467 N.E.2d 1078), we conclude that any prejudice resulting therefrom was cured by the trial court's sustainment of defense counsel's objection (see *People v. Johnson* (1984), 122 Ill. App. 3d 532, 538, 461 N.E.2d 585). We note that the decision of *People v. Ray* (1984), 126 Ill. App. 3d 656, 467 N.E.2d 1078, upon which defendant relies, is distinguishable from the case at bar, as the defendant's conviction in *Ray* was reversed and the cause remanded because of the cumulative impact of numerous improper, prejudicial, and highly inflammatory comments by the prosecution in closing argument. The improper arguments made in the case at bar do not rise to the level of the prosecutorial misconduct found in the *Ray* case.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, J., concurs.

JUSTICE JIGANTI, dissenting:

In my estimation Mary Cisewski did not receive a fair trial. The defendant characterized it as a "trial by ambush." The majority agrees that that is an apt description. The majority concludes, however, that the error was harmless. It concludes this by citing certain statements of the defense attorney. I do not believe that you can lightly pass over the fact that the jury was instructed, at defense counsel's request, on the issue of involuntary manslaughter. That is, Mary Cisewski would be guilty of the lesser offense of involuntary manslaughter if she acted in disregard of the decedent's safety. The testimony that Mary Cisewski telephoned the decedent's employer after the occurrence posited with the jury the idea of a very deliberate act that militates against the conclusion that the conduct of this paranoid woman was reckless.

I would reverse and remand this matter for a new trial.