THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THEODORE TAYLOR, Defendant-Appellant.

First District (3rd Division)    No. 80-380

Opinion filed June 30, 1982.

Ralph Ruebner and Eva Field, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and Gregory J. Ellis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

In a jury trial, defendant, Theodore Taylor, was found guilty of murder and attempt murder and was sentenced to a term of 14 to 20 years for murder and a term of two to six years for attempt murder, the sentences to run concurrently. He contends that (1) he was denied due process because a gun and cartridges recovered at the scene were destroyed prior to trial; (2) he was denied due process because other evidence was not produced prior to trial or included in the State's answer to discovery; and (3) his election of a jury trial was not knowingly made. We affirm.

At approximately 9 p.m. on April 5, 1977, defendant went to the home of Dorothy Taylor, his ex-wife, at 12232 S. Stewart in Chicago, Illinois. At the house, defendant saw Dorothy's boyfriend, George Bullocks. Defendant returned Dorothy's car keys and left after a short time.

At approximately 12 a.m., defendant returned to Dorothy's house with a gun, entering through a basement window. He proceeded to Dorothy's bedroom to talk to her about her relationship with Bullocks. According to Dorothy, defendant said that he had come to kill her. As Dorothy walked towards defendant, he shot her and then shot in the direction of Bullocks. Dorothy kept walking towards defendant and tried to pull the gun away from him. Dorothy and Bullocks then struggled with defendant for control of the gun. During the struggle, Dorothy called her

son, Theodore, and told him to help hold the gun down while she went to another bedroom to call the police. Dorothy did not see any other gun that evening.

Defendant testified that when he entered Dorothy's bedroom, Bullocks came after him with raised fists, so defendant pulled out his gun. Defendant and Bullocks began to struggle, and the gun fired. Defendant regained control of the gun and shot Bullocks. Dorothy approached defendant with her hands in a claw-like position, and when she was a few feet from defendant, he shot her. Defendant did not see any other weapons that evening.

The police arrived, and defendant told them that he shot Dorothy and Bullocks. Later, it was discovered that defendant was shot in the leg. Defendant told one of the police officers that he shot himself.

Defendant first argues that his right to due process was violated because of the State's failure to preserve and produce certain evidence. Initially, defendant complains about the destruction of the gun and four cartridges recovered at the scene of the offense. On the first day of trial, it was learned that the gun and cartridges had been erroneously destroyed pursuant to routine internal procedures of the Chicago Police Department. At that time, defendant moved that the State be precluded from making any reference to these items at trial, and the trial court denied the motion. Defendant argues that the destruction of these items curtailed his ability to present a defense showing that another weapon might have been used. Defendant testified that he fired four shots, and he contends that Dorothy's testimony created an inference that another weapon may have been used because she had seven bullet wounds, and Bullocks and defendant had also been wounded. Dorothy, however, testified that she was struck by two bullets, and there is no evidence that she was actually shot seven times or that each wound was caused by a separate bullet.

■■ In addition, although we do not approve of or condone the destruction of the gun and cartridges, we do not believe that defendant's right to due process was violated. Defendant has not shown how the gun or cartridges were material or favorable to his defense. (See *People v. Borges* (1980), 88 Ill. App. 3d 912, 918, 410 N.E.2d 1076, 1081; *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 416-17, 394 N.E.2d 1340, 1351-52.) The theory which defendant states he intended to prove, *i.e.*, that a second gun was involved, was clearly contradicted by defendant's own testimony. (*Cf. People v. Ellis* (1981), 93 Ill. App. 3d 79, 83, 416 N.E.2d 1174, 1177.) At trial, defendant testified that he did not see any other weapon that evening. He stated that Bullocks came after him with clenched fists and that Dorothy approached him with her hands in a claw-like position. Furthermore, no other evidence at trial supports a theory that the destroyed gun was not defendant's gun. Also, Dorothy's

testimony is in complete agreement with defendant's testimony that no other gun was involved. Therefore, based on the overall evidence in the case, it is clear that the production of the gun would not have been material or favorable to defendant's case. Moreover, defendant's actions support this conclusion. Defendant made no pretrial request to examine the gun or subject it to testing, and he showed no interest in the gun until he discovered that it had been destroyed. Under the circumstances, we conclude that the destruction of the gun and cartridges did not result in a violation of defendant's right to due process.

Defendant next contends that he was prejudiced due to the failure of the State to disclose the existence of a ballistics test. On the third day of trial, it was discovered that a bullet had been removed from Bullocks' body and had been examined by a firearms expert of the Chicago Police Department. Defendant claims prejudice in that he never had an opportunity to examine the ballistics report. Defendant also maintains that error occurred because of the State's failure to list a witness who was called to testify. In its answer to discovery, the State listed as prospective witnesses "Hospital Staff including [two named doctors]" but did not include Dr. Khan, who was called to testify. During the trial, the State asked for leave to amend its list of witnesses to add Dr. Khan's name, and the court allowed the motion.

When there is a failure to comply with discovery requests, it is within the discretion of the trial court to determine the proper remedy. (*People v. Wilson* (1978), 61 Ill. App. 3d 401, 403, 377 N.E.2d 1284, 1286.) The court may, in its discretion, order a continuance, mandate disclosure and permit the use of the evidence at trial. (*People v. Curtis* (1977), 48 Ill. App. 3d 375, 383, 362 N.E.2d 1319, 1325.) Absent a showing of surprise or prejudice, the trial court's decision will not be reversed. (*People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 260, 402 N.E.2d 677, 685; *People v. Bingham* (1979), 75 Ill. App. 3d 418, 423, 394 N.E.2d 430, 434; *People v. Wilson* (1978), 61 Ill. App. 3d 401, 403, 377 N.E.2d 1284, 1286.) Surprise or prejudice is not established if defendant has failed to take advantage of an opportunity to interview a witness and has not attempted to obtain a continuance. *People v. Dees* (1977), 46 Ill. App. 3d 1010, 1019, 361 N.E.2d 1126, 1132; see *People v. Steel* (1972), 52 Ill. 2d 442, 450, 288 N.E.2d 355, 360.

██ As to the ballistics test, we find no surprise or prejudice to defendant. Defense counsel was given a copy of the firearms examiner's report, and the firearms examiner was subsequently examined in chambers by the court and both counsel. The State did not use the report at trial. Furthermore, there was no showing that the report was favorable to defendant. The firearms examiner stated that after comparing the bullet removed from Bullocks and a test bullet fired from defendant's gun, the bullet

removed from Bullocks did not reproduce sufficient individual characteristics to enable him to make an identification. As the trial court stated, the report was noncommittal or neutral, and thus, it could not have affected the verdict. Consequently, defendant's argument is without merit. See *People v. Hofstetter* (1980), 89 Ill. App. 3d 758, 762, 412 N.E.2d 33, 36; *People v. Penland* (1978), 64 Ill. App. 3d 656, 661, 381 N.E.2d 840, 843.

■■ We also conclude that defendant has failed to make a showing of surprise or prejudice as to Dr. Khan. The trial judge told defendant that he would have an opportunity to interview Dr. Khan before he testified. The judge also said that defendant would be given additional time to investigate if he felt it was necessary. The record does not indicate that defendant took advantage of these opportunities. Under the circumstances, there is no showing that the trial court abused its discretion in allowing Dr. Khan to testify.

■■ Lastly, defendant argues that his election to be tried by a jury was not knowingly made because at the time of his election, he was not aware that the gun and cartridges had been destroyed, that the ballistics report existed, and that Dr. Khan was going to testify. Initially, we note that defendant did not raise this issue at trial or in his post-trial motion, and therefore, he has failed to preserve the issue for review. (See *People v. Blackwell* (1979), 76 Ill. App. 3d 371, 381, 394 N.E.2d 1329, 1337.) In fact, defendant learned about the destruction of the gun and cartridges prior to trial, but he did not attempt to change his election to a bench trial.

As discussed above, defendant was not prejudiced by the absence or late disclosure of the evidence about which he complains. This case is distinguishable from *People v. Norris* (1978), 62 Ill. App. 3d 228, 379 N.E.2d 80, a case cited by defendant. In *Norris*, defendant had waived a jury trial based on the alleged belief that there were no eyewitnesses to the crime and that all the evidence against him was circumstantial. The State moved to amend its list of witnesses after defendant waived a jury trial and opening statements were made; the motion was granted. One of the added witnesses testified that he saw defendant pull a gun, and another added witness testified that he saw defendant shoot the deceased. Defendant moved for a mistrial after the testimony of the witness who saw defendant pull a gun, but the motion was denied. The appellate court held that the trial court should have declared a mistrial because defendant was unaware of the most damaging evidence against him at the time he waived his right to a jury trial. The court stated that the additional evidence surprised and prejudiced defendant. Here, defendant did not move for a mistrial based on his unknowing election of a jury trial when he became aware of the destruction of the gun and cartridges, the existence of the ballistics report or the fact that Dr. Kahn would testify.

Also, the undisclosed and destroyed evidence did not surprise or prejudice defendant here. Therefore, defendant's contention is without merit.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

WHITE, P. J., and McNAMARA, J., concur.