THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES R. SCHEIDT, SR., Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DODGE VAN 1978, Defendant-Appellant:

Third District   Nos. 3—85—0470, 3—85—0701 cons.

Opinion filed April 24, 1986.

Thomas E. Cowgill, of Block, Krockey, Cernugel & Cowgill, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Howard R. Wertz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Defendant, Charles Scheidt, Sr., was convicted of syndicated gambling and sentenced to two years' imprisonment. We affirm.

On December 1, 1984, pursuant to a search warrant, members of the Will County Cooperative Police Assistance Team (CPAT) stopped the van defendant was driving. CPAT was a joint effort of the Will County sheriff's department and the city of Joliet police department. A search of defendant's person turned up four packets of United States currency worth over $1,200, $131 in currency mixed in with football parlay cards and horse racing bets, and the bottom stubs of 79 football parlay cards. The van contained betting slips and parlay cards worth several thousands of dollars. A later inspection turned up $2,157 in parlay cards in a hidden compartment.

Defendant's house was searched as well. Blank parlay cards, a notebook evidencing horse racing bets, and assorted paraphernalia related to horse racing and football were found.

The offense of syndicated gambling is defined as follows:

"(b) A person commits syndicated gambling when he operates a 'policy game' or engages in the business of bookmaking.

* * *

(d) A person engages in bookmaking when he receives or accepts more than five bets or wagers upon the result of any trials or contests of skill, speed or power of endurance or upon any lot, chance, casualty, unknown or contingent event whatsoever, which bets or wagers shall be of such size that the total of the amounts of money paid or promised to be paid to such bookmaker on account thereof shall exceed $2,000. Bookmaking is the receiving or accepting of such bets or wagers regardless of the form or manner in which the bookmaker records them." Ill. Rev. Stat. 1985, ch. 38, par. 28—1.1

■ Defendant argues that he was not proved guilty beyond a reasonable doubt because there was no evidence that he was the person who actually recorded the bets. At the time of trial, the parties proceeded under the belief that recordation of the bets or wagers was an element of the offense of syndicated gambling. However, in *People v. Dugan* (1985), 109 Ill. 2d 8, 485 N.E.2d 315, our supreme court held that recordation was no longer an element of this offense. Consequently, defendant's challenge on this point is without foundation. Similarly, defendant's objection to the giving of certain instructions on the recordation element is now a nonissue.

■ Defendant next contends that the State failed to prove that he was paid money or received promises to pay money. In *People v. Miller* (1984), 128 Ill. App. 3d 574, 470 N.E.2d 1222, the second district held that the offense was complete when the accused accepted or received five bets worth over $2,000. In the phrase "money paid or

promised to be paid to such bookmaker," in its view, the phrase "to such bookmaker" merely qualified the former terms and did not create the additional element for which defendant argues. We need not address this fine point of interpretation, however, for we believe that the circumstantial evidence created an overwhelming inference that there was, over a short period of time, over $2,000 paid or promised to be paid to defendant. His argument that only the cards, slips and cash found on his person can be considered is incorrect. He contends that the money and evidence of wagering found in his house and his van have not been sufficiently connected to him to show that it was actually he who was paid or promised the money, or that the slips and cards represented wagers on events which were about to or had recently taken place. We disagree. The nature of the bookmaking trade is to provide the least amount of evidence necessary to run the business efficiently. It would defy common sense that defendant possessed hundreds of parlay cards and horse racing bets for events which had long since occurred. Moreover, although the mere presence of the evidence in his van may not have been sufficient to support this supposed element, his contemporaneous possession of over $1,200 in cash gainsays any innocent explanation of the presence of other material.

■ Similarly, defendant argues that he neither received nor accepted bets or wagers in excess of $2,000. Once again, defendant cannot escape the force of the inference arising from the materials found on his person, in his van and in his house. The absence of an ironclad documentary link between the defendant, his customers and the events is not required. *People v. Montes* (1978), 57 Ill. App. 3d 824, 373 N.E.2d 658.

In presenting its case against defendant, the State introduced betting slips and parlay cards found in the searches previously described. In order to decipher the symbols and abbreviations on the horse betting slips, for example, the police officers were required to use specialized knowledge gained through training or experience. Defendant objected to expert testimony from the officers on the grounds that their status as experts and their qualifications had not been disclosed to defendant before trial as required by Supreme Court Rule 412 (87 Ill. 2d R. 412). Defendant moved for the sanction of exclusion, but the trial court denied the motion.

■ ■ We agree that defendant was entitled to disclosure of the identity of experts. However, noncompliance with the rules of discovery will not be reversible error absent a showing of prejudice. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) It is difficult to see how defendant was prejudiced by this failure to disclose. He knew

that the police officers would be testifying at trial. He also knew from other discovery the nature of the items seized from his person, his van and his house. It could not have come as a surprise that some or all of the officers would have experience in investigating bookmaking operations. For the same reasons, the failure to reveal qualifications was not prejudicial.

■ Defendant also claims error in the failure of the State to turn over the report of Officer Meduga of the Illinois Department of Law Enforcement. The trial court held an extensive hearing on this question. His finding that the failure to disclose was not prejudicial is supported by the record. For the most part, Meduga's report was duplicative of the reports of the CPAT officers. Also, defendant was given time to read the report before cross-examining Meduga.

■ Defendant next offers a sweeping challenge to the admission into evidence of betting slips. He argues that the slips were irrelevant in that they were not dated by year. Consequently, he argues, there is nothing on the slips to connect them to events which were about to or had recently taken place.

This position is without merit. Evidence is relevant if it tends to prove or disprove any fact in dispute. The presence of slips containing wagering information is certainly probative of the receipt of acceptance of wagers. The absence of dates on the slips merely affects the weight to be afforded to them by the trier of fact.

■ Finally, defendant urges that the court erred in failing to place him on probation. At the sentencing hearing, evidence was introduced that defendant continued to engage in illegal gambling following the instant conviction. The trial court concluded that it would deprecate the seriousness of the defendant's conduct and be inconsistent with the ends of justice to put defendant on probation. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—1.) This finding was within the court's discretion.

■ Defendant also took an appeal from the forfeiture of his van. However, no specific challenge to the order of forfeiture was raised in his brief, so the issue must be deemed waived.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER and WOMBACHER, JJ., concur.