THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER WEBER, JR., Defendant-Appellant.

First District (1st Division)    No. 1—90—3189

Opinion filed May 31, 1994.

Michael J. Pelletier, and Martin Carlson, both of State Appellate Defender's Office, of Chicago, and David S. Mejia, of Oak Park, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant Peter Weber was charged by indictment with first degree murder and concealment of a homicidal death. (720 ILCS 5/9—1, 9—3.1 (West 1992).) Following a jury trial, he was found guilty of both offenses and sentenced to 25 years and 5 years, respectively, to be served consecutively. On appeal defendant challenges the legal sufficiency of the indictment. Additionally, he raises two other issues: whether the prosecutor's failure to disclose the identity of an expert obtained seven months before trial, but not disclosed until rebuttal, should have resulted in a bar of that expert's testimony and whether the defendant's right to confrontation and cross-examination was violated where the trial court allowed into evidence statements made by the victim to third persons prior to her death. For the reasons which follow, we affirm.

The record reveals that on the afternoon of October 28, 1988, the victim, Marie Pompilio, earlier reported as missing, was discovered in an alley in Skokie, Illinois. Her body was partially clad and lying

face down in dense bushes. Her head was covered by a blood-soaked tee shirt and she had a large gaping incise wound to the neck.

In the early morning hours of October 28, 1988, defendant was brought into the Skokie police department and questioned. He eventually gave a full statement and repeated it several times. In essence, defendant stated that he and Marie argued on the evening of October 27, 1988. While riding around in his car, she first told him she wanted to date other people. He responded to her that if that was the case, he would not continue to visit her because he did not wish to have that type of relationship. He stated that she then placed her hands on his shoulder and tried to reason with him to agree with having that type of relationship. He pushed her hands from his shoulder, and she began hitting him, scratching him and pulling his hair. In an effort to defend himself from her violent behavior, he placed his hands around her throat and pulled her down onto the seat. He stopped choking her when she became limp and her arms fell to her side. After suddenly realizing that she did not appear to be breathing, he drove Marie into an alley, partially disrobed her and cut her throat with his pocket knife in an effort to cover up the incident.

Defendant was first indicted on November 17, 1988, for "having stabbed and killed Marie Pompilio with a knife." Defendant filed a written motion to dismiss the indictment on the grounds that the State refused to inform the grand jury that he never stabbed Marie while she was alive. Prior to the court ruling on the motion, the State nol-prossed the original indictment and obtained a second indictment. The second indictment alleged in count I that defendant "without lawful justification intentionally and knowingly strangled and killed Marie Pompilio with a knife" and in count II that defendant "without lawful justification strangled and killed Marie Pompilio knowing such acts created a strong probability of death or great bodily harm to Marie Pompilio." Defendant was arraigned on the second indictment, and all motions and orders related to the first indictment were transferred to the second indictment.

On the day the jury trial commenced, the State amended its list of witnesses. However, that amendment did not include the name of Dr. Cleveland. During the State's case in chief, several law enforcement personnel testified about their respective roles in the investigation into Marie's murder. Dr. Robert Stein, chief medical examiner of Cook County and a forensic pathologist, who had performed an autopsy on the deceased, testified as to the cause of death. He admitted that he had initially concluded that the knife wounds were the cause of death. However, he stated that after reviewing the police reports, the defendant's statements and after reexamining

Marie's clothes, he changed his opinion as to the cause of death and, accordingly, amended the death certificate. He changed the cause of death to "manual strangulation in association with an incised wound to the neck."

Marie's friends and her roommate testified about Marie's relationship with the defendant. Heather Dickinson testified that she remembered how Marie and defendant celebrated the day of the month they met with cards and gifts. Marie also had told Heather that she wanted to break up with defendant because she was feeling trapped and overly protected. Marie's roommate, Amanda, testified that defendant visited Marie often and would buy presents, balloons and candy. On the day of the murder, Amanda saw defendant when he arrived on the campus with a pumpkin and a small knife to carve it. She saw him later that evening, at which time defendant gave her Marie's keys and told her that he and Marie had an argument and that Marie had gotten out of the car.

Marie's parents, her other relatives and friends, as well as the campus police, testified about their search for her. The campus policeman also stated that he observed scratches on defendant's hands.

The defendant then took the witness stand and testified in his own behalf. He was an excellent student, an athlete and enjoyed a close relationship with his family. He and Marie had met in their senior year of high school and started dating regularly in February of 1988. They were together almost every day and saw each other three or four times a week including the weekends, except for the time during the summer of 1988 in which he served in the United States Air Force. Through the week of the incident, their relationship had not changed. Defendant also described what occurred on October 27 and stated that they had an argument and that Marie had attacked him. Defendant explained that he was trying to protect himself and not hurt Marie. After he "tried to push her away and started squeezing" her, he "stopped when her arms fell to her side." He thought Marie was angry and ignoring him when she did not respond to her name. However, once he stopped the car, he felt for her breath but did not feel anything. Defendant believed Marie was dead and because he was scared he took her body to an alley and left her there. He remembered "seeing a cut on her neck *** seeing the knife"; however, he said it was an accident.

Dr. Larry Blum testified as defendant's expert witness. He stated that he examined the physical evidence, considered the autopsy report, the scene and the surrounding circumstances. He concluded that Marie's cause of death was manual strangulation and that the incision wounds to the neck were post-mortem.

On the last day of trial, the State tendered the vitae of Dr. Frank Cleveland, an out-of-State forensic expert. The defense objected to his testimony on the grounds of surprise, prejudice and violation of the discovery rules, specifically Supreme Court Rule 220 and Rule 412 (134 Ill. 2d Rules 220, 412). The State responded that Supreme Court Rule 220 governs discovery in civil proceedings but does not apply to criminal trials. Over the defendant's objection, the trial court allowed Dr. Cleveland to testify as a rebuttal witness. He opined that death was caused by external hemorrhage due to incise wounds of the neck. However, the bruises were made anti-mortem, before Marie died. Following closing arguments and instructions, the jury's deliberations resulted in guilty verdicts.

Defendant initially contends that the indictment is insufficient and fails to give him reasonable notice of the charge. He argues that the indictment is phrased disjunctively because it states he committed first degree murder in two separate, distinct ways exclusive of one another—by strangulation and by a knife incision wound to the throat.

■ Our legislature has set forth the requirements for the form of a charging document in section 111—3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3 (West 1992)). That section provides that a charge must: (1) state the name of the offense; (2) cite the statutory provision allegedly violated; (3) set forth the nature and elements of the offense charged; (4) state the date and county of the offense; and (5) state the name of the accused. (725 ILCS 5/111—3 (West 1992); *People v. Brouder* (1988), 168 Ill. App. 3d 938, 942, 523 N.E. 2d 100.) The purpose of an indictment is to advise the accused of the nature of the charge so that he is adequately able to prepare his own defense. (*People v. Godina* (1991), 223 Ill. App. 3d 205, 216, 584 N.E.2d 523.) In order to vitiate a conviction based on a faulty indictment, there must be a variance between the allegations in the charging instrument and the proof at trial. The variance must be material and of such character as to mislead the defendant in preparing his defense or expose him to double jeopardy. (*People v. Davis* (1980), 82 Ill. 2d 3d 534, 413 N.E.2d 413.) If a defendant is sufficiently advised of the charges filed against him, the convictions may be sustained. (*People v. Alexander* (1982), 93 Ill. 2d 73, 442 N.E.2d 887.) When the sufficiency of an indictment has been challenged at trial, the standard of review is whether the indictment states the nature of the offense and adequately sets forth each of the elements of that offense. *People v. Young* (1991), 220 Ill. App. 3d 488, 492, 581 N.E.2d 241.

■ In perusing the indictment filed in this case, we find that it

complies with all of the foregoing requirements. The first count charges that defendant "strangled and killed Marie Pompilio with a knife." This language did not require the jury to determine whether the victim died as a result of strangulation or knife wound. Further, the evidence supports the charge. Dr. Stein testified that death was caused by strangulation "in association with incised wound of the neck." The cause of death stated in count II is strangulation.

Moreover, even assuming *arguendo* that we were to find that cause of death is disjunctively phrased, there is no fatal defect in the indictment. In *People v. Coleman* (1971), 49 Ill. 2d 565, 276 N.E. 2d 721, defendant was charged with the murder of his wife and the original indictment charged murder by stabbing with a knife. (*Coleman,* 49 Ill. 2d at 570.) However, the prosecution amended the indictment to charge that the defendant murdered his wife by stabbing and/or asphyxiating her by use of hands, bedsheet or blanket. On review, the Illinois Supreme Court held the amendment proper because the allegation of the means used to cause death was not an essential part of the indictment. The court found that the language adequately informed the defendant of the charge against him.

Defendant argues that the manner of pleading separate and independent acts in a single count was contradictory, confusing and lacked certainty. He cites *People v. Heard* (1970), 47 Ill. 2d 501, 266 N.E. 2d 340, in support of his argument. However, unlike the *Heard* case, the indictment in the present case contains no disjunctive allegations in either of the counts at issue. Secondly, the first degree murder statute, unlike the gambling statute involved in *Heard,* is not one which "names disparate and alternative acts, any one of which will constitute the offense." To the extent any disjunctive allegations exist, they pertain to the nonessential particulars of the offense, rather than a naming of alternative acts, any one of which constituted the offense of murder. Accord *People v. Baugh* (1988), 145 Ill. App. 3d 133, 495 N.E. 2d 688; *People v. Lewis* (1973), 14 Ill. App. 3d 237, 240, 302 N.E. 2d 157.

■ Defendant's next contention is that the trial court abused its discretion in allowing the testimony of rebuttal expert witness Dr. Cleveland. The State counters that it did not violate the discovery rules because the witness was disclosed when the prosecution formed the intent to call the witness. The law regarding disclosure of rebuttal witnesses in criminal cases is well settled. Until the prosecutor forms the intent to call the witness, disclosure is not required. (*People v. Fox* (1988), 177 Ill. App. 3d 602, 611, 532 N.E. 2d 472.) This court has held that "[b]ecause the State may not know if a witness will be called in rebuttal until the defense testimony is heard, the State

need not inform the defense of its intention to call a rebuttal witness until that intention is formed." (See, *e.g.*, *People v. Jackson* (1990), 198 Ill. App. 3d 831, 847-48, 556 N.E. 2d 619.) When the State fails to make timely disclosure of a rebuttal witness, the trial court is not required to exclude the rebuttal witness' testimony. (*People v. Bock* (1993), 242 Ill. App. 3d 1056, 1068, 611 N.E.2d 1173.) In *Bock*, defendant objected to the State's decision to call a rebuttal witness who was identified on the morning of the trial. Defendant alleged that, because the witness was disclosed on the day of the trial, he had not had an opportunity to do any investigation. However, defendant did not request a continuance and the court allowed the witness to testify. On appeal, the appellate court held that the defendant was not prejudiced by the testimony of the rebuttal witness. (*Bock*, 242 Ill. App. 3d at 1069.) The court reasoned that defendant had an opportunity to interview the rebuttal witness, failed to request a continuance to conduct further investigation and cross-examined the witness during trial.

In the present case, the State argues that the tactical decision to call Dr. Cleveland as a witness depended on the content and effect of defense witness Dr. Blum's testimony. Moreover, defendant's reliance on Supreme Court Rule 220 is misplaced. Criminal discovery is governed by Supreme Court Rule 412 (134 Ill. 2d R. 412(a)(ii)). Supreme Court Rule 412 (a)(ii) provides in pertinent part:

> "(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protection orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
> \*\*\*
> (ii) any written or recorded statements and the substance of any oral statements made by the accused\*\*\*and a list of witnesses to the making and acknowledgment of such statements." (134 Ill. 2d R. 412(a)(ii).)

Additionally, counsel was given and took advantage of the opportunity to interview Dr. Cleveland before he testified. Counsel then proceeded to trial without requesting a continuance for further investigation. Finally, even assuming a discovery violation occurred, the error is harmless and does not mandate a new trial. (See, *e.g.*, *People v. Cisewski* (1987), 118 Ill. 2d 163, 175, 514 N.E.2d 970.) This was not a close case and the evidence of murder was overwhelming. Whether defendant choked the victim to death or killed her by cutting her throat, the evidence reveals that defendant murdered Marie, either intentionally or by an act which he knew or should

have known created a strong probability of death or great bodily harm. The elements of murder which must be established are the proof of death and the proof of a criminal agency causing death. (*People v. Lopes* (1974), 17 Ill. App. 3d 986, 990, 309 N.E.2d 108.) Both of these must be established by evidence beyond a reasonable doubt. The evidence must show that defendant's act was a contributing cause to a death such that the death did not result from a source unconnected with the defendant's act. (*People v. Dent* (1992), 230 Ill. App. 3d 238, 595 N.E.2d 18.) Among the factors to be considered in determining whether a new trial is warranted where a determination has been made that Rule 412 has been violated are the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped the defense discredit the evidence. *People v. Weaver* (1982), 92 Ill. 2d 545, 559, 442 N.E.2d 255.

Here, the defendant has not demonstrated to this court how any further investigation of the rebuttal witness would have altered his trial strategy and possibly changed the outcome of this case. Exclusion of the evidence is within the sound discretion of the trial court and will be reversed only on a showing of prejudice to the defendant. (*People v. Fauntleroy* (1991), 224 Ill. App. 3d 140, 162, 586 N.E.2d 292.) For the foregoing reasons, we cannot say that the trial court abused its discretion in allowing Dr. Cleveland's rebuttal testimony.

■ Finally, defendant contends that the trial court improperly allowed in evidence the victim's hearsay statements in violation of his confrontation rights. The State responds that the trial court correctly allowed such testimony in because it was indicative of the victim's state of mind prior to her death and was relevant to establish that the victim carried out her intention to tell defendant of her change of heart regarding the relationship, to establish the relationship between the victim and the defendant, and to rebut the defense of accident.

Here, Marie's statements to others that she intended to tell defendant that she wanted to date other people were properly admitted to show that she made such statements to him. (See, *e.g.*, *People v. Reddock* (1973), 13 Ill. App. 3d 296, 300 N.E. 2d 31; see also *People v. Adams* (1981), 102 Ill. App. 3d 1129, 430 N.E. 2d 267.) Further, the testimony in this case was relevant to dispute defendant's statements that there had been no change in the relationship. (Accord *People v. Lang* (1982), 106 Ill. App. 3d 808, 436 N.E. 2d 260.) The State is permitted to bolster its case with corroborative evidence to the extent such evidence is otherwise relevant, and the possible prejudice of any

318

unnecessary accumulation of repetitive testimony is a matter for the discretion of the trial court. (*People v. Frazier* (1984), 129 Ill. App. 3d 704, 711, 472 N.E.2d 1183.) Moreover, even if the statements were improper, any error was harmless since the defendant himself testified and told police that Marie said she wanted to date others. This statement or one that she wanted to break up with defendant both were sufficient to generate an altercation between the two and to establish a motive for the murder. Accordingly, evidence of the victim's statements was merely cumulative and any error was harmless. *People v. Griffin* (1988), 175 Ill. App. 3d 111, 118, 529 N.E. 2d 929.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.